# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 23-77-BAJ-RLB |
| | : | |
| HANNAH KINCHEN | : | |

## UNITED STATES' OMNIBUS RESPONSE
## TO DEFENDANT'S PRETRIAL MOTIONS

Defendant Hannah Kinchen has filed a Motion for Bill of Particulars (Rec. Doc. 39) and a Motion to Compel Discovery (Rec. Doc. 38) (hereinafter, collectively, "pretrial motions"). In the motion for bill of particulars, defendant seeks evidentiary details about the images of child pornography at issue in the indictment. In the motion to compel, she seeks copies of other images of the minor victim that are not child pornography. Because the United States has provided all the discovery to which defendant is entitled—and more—the motions should be denied without a hearing.

## I.   BACKGROUND

### A.   Relevant Facts

On numerous occasions between July 2020 and October 2020, defendant brought Minor Victim A, then twelve years old, to Grant Durtschi (Co-Conspirator 1), whom she knew to be an admitted pedophile, to take lascivious and sexualized photos of Minor Victim A that could be sold for profit online to other pedophiles. These photography "shoots" occurred on at least seven different occasions at multiple locations, yielding approximately 10,000 images. Defendant organized, facilitated, was present for, and participated in all of the photo shoots.

The vast majority of the images produced during the shoots featured Minor Victim A wearing string bikinis or lingerie while positioned in sexually suggestive poses. The shoots

occurred in bedrooms, pools, and other settings. Many of the photos were taken of Minor Victim A from behind with the focus on her buttocks and genitalia. Minor Victim A's face is not even visible in these images. Defendant was paid for the sale of the images of Minor Victim A to pedophiles online. Contrary to assertions in defendant's motions, in several of the images, Minor Victim A's genitals were partially or completely exposed and visible.

One of the photography shoots occurred in Breaux Bridge, Louisiana, on or about July 20, 2020. At that shoot, the victim was photographed on a bed in various outfits, including a blue G-string bikini (the "blue suit series") and a white leotard with white stockings and red high heels (the "white leotard series"). Another of the shoots took place in Plano, Texas, in October 2022. There, the victim was photographed in a pool in a black bikini (the "black bikini series") and a red bikini ("red bikini series"), among other outfits. Images from the white leotard series were transmitted to and downloaded in this district by defendant.

**B.    Procedural History**

A grand jury charged defendant on September 7, 2023 with Conspiracy to Produce Child Pornography, in violation of 18 U.S.C. § 2251(a) & (e) (Count One); Production of Child Pornography, in violation of 18 U.S.C. § 2251(b) (Count Two); Conspiracy to Distribute Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1) (Count Three); and Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1) (Count Four). Rec. Doc. 1.

On September 13, 2023, defendant appeared for arraignment and pleaded not guilty. Rec. Doc. 6. Following a detention hearing, defendant was released with conditions to await trial, which was scheduled to begin on November 6, 2023.  Rec. Docs. 6 and 8. On October 7, 2023, defendant

filed an Unopposed Motion to Declare Case Complex and to Continue Trial, which was granted. Rec. Docs. 17 and 18.

### C.    Discovery Productions

On October 2, 2023, the United States tendered discovery materials and notified the defendant of records and devices available for inspection at the FBI's office. *See* Exhibit A. The discovery materials consisted of the following records:

| Folder | Bates Range(s) |
|---|---|
| 1-  FBI Reports | Kinchen_000001-000874 |
| 2-  Interview Reports | Kinchen_000875-001050 |
| 3-  Expert Reports | Kinchen_001051-001058 |
| 4-  Investigative Reports | Kinchen_001059-001529 |
| 5-  Criminal Histories | Kinchen_001530-001594 |
| 6-  Search Warrants | Kinchen_001595-004676 |
| 7-  Subpoenas | Labeled individually |
| 8-  Recordings | N/A |
| 9-  Miscellaneous Documents | Kinchen_004677-004687 |

On December 14, 2023, the United States emailed defense counsel offering to schedule a time for him to review discovery that was in the custody of the FBI.

Defense counsel reviewed the evidence at the FBI on January 22, 2024. At that time, all of the images were loaded on a secure computer for defense counsel's review. Defense counsel requested that he be shown the images of child pornography underlying the indictment. The FBI provided for his review images from the blue suit series, the white leotard series, the red bikini series, and the black bikini series. Defense counsel spent approximately 20 minutes reviewing images.

Following this initial review, defense counsel requested that the United States make the images available with Bates-labels, identify the images constituting child pornography or child sexual abuse material ("CSAM"),[1] and separate those images from other, non-CSAM images. Although not required by rule or otherwise, the United States requested that the FBI review the production and attempt to label or index images to facilitate defense counsel's review.

On January 25, 2024, the United States produced supplemental discovery materials to the defendant and offered to meet with defense counsel to review the prosecution's evidence, an opportunity often referred to as a "reverse proffer." *See* Exhibit B. The supplemental discovery materials consisted of the following records:

| Folder | Bates Range(s) |
|---|---|
| 1- Email_HK_Redacted | Kinchen_004688-004689 |
| 2- APSO Reports_Redacted | Kinchen_004690- 004700 |
| 3- Final Report of Cellular Analysis | Kinchen_0004701-004711 |
| 4- Forensic Examination Report | Kinchen_004712-004713 |
| 5- Dutka Email Exchange | Kinchen_004714-004718 |
| 6- Interview Report_T.G. | Kinchen_004719-004720 |
| 7- File Listing[2] | Kinchen_004721-010779 |
| 8- Cell Phone Extraction Report | Kinchen Phone_000001-069164 |

---

[1] The phrase "child sexual abuse material" is not used in the charging statutes. It is simply an alternate way of referring to child pornography.

[2] The file listing was produced in both .pdf and .csv formats, and contained a list of all of the images in the production.

On or about April 5, 2024, the FBI completed the time-consuming task of tagging images for identification. This process required the FBI's Senior Digital Forensic Examiner/CART Coordinator to work with case agents to identify the media relevant to the discovery production; export the relevant media, along with the metadata associated with each image, from the main dataset; and process the images with a forensic tool to assist with media review. There were approximately 10,000 images, all of which were given unique filenames for identification, along with the metadata associated with each image, as seen in Exhibit C and in the screenshot below:



Defense counsel was notified that the records were available for review on April 8, 2024. On or about May 1, 2024, all of the newly-tagged images were made available to defense counsel on a secure computer at the FBI's office. Defense counsel reviewed the images for approximately 35 minutes.

On May 17, 2024, the defendant filed the instant pretrial motions. Rec Docs. 38 and 39. First, defendant filed a motion to compel the production of copies of non-pornographic or non-CSAM images. Second, defendant filed a motion for a bill of particulars requesting that the United States identify specific images deemed to be child pornography or CSAM along with other information related to each image. As grounds for both motions, defense counsel asserts that none of the images he reviewed constitute child pornography or CSAM and that he doubts that all of the images have been made available to him. Rec. Doc. 38-1 at 3; Rec. Doc. 39-1 at 5.

To date, defense counsel has not accepted the prosecution's offer of a reverse proffer.

## II.   DEFENDANT'S MOTION FOR BILL OF PARTICULARS IS WITHOUT MERIT.

Under Rule 7(f) of the Federal Rules of Criminal Procedure, the court "may direct the government to file a bill of particulars." The purpose of a bill of particulars is to enable the defendant to prepare a defense with full knowledge of the charges against him, to minimize the danger of surprise at trial, and to enable double jeopardy to be pled in case of a subsequent prosecution. *United States v. Mackey,* 551 F.2d 967, 969 (5th Cir. 1977). A bill of particulars is required only if the charges "are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). A defendant is thus not entitled to a bill of particulars as a matter of right. *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *see also United States v. Burgin*, 621 F.2d 1352, 1358 (5th Cir. 1980). ("A defendant possesses no right to a bill of particulars.")

It is elementary that a bill of particulars is not a discovery device; the United States need not disclose in a bill of particulars the details of the evidence by which it intends to prove its case. *See Burgin*, 621 F.2d at 1359; *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978); *United*

*States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978). In other words, a defendant is not permitted to seek a bill of particulars to discover evidence of the Government's case prior to trial or to force the Government to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizo*, 451 F.2d 49, 64 (3rd Cir. 1971); *see also Burgin*, 621 F.2d at 1359 (the United States need not "explain the legal theories upon which it intends to rely at trial."

If the indictment is sufficient to advise the defendant of the nature of the charge, a bill of particulars is generally not necessary. *See United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) ("the criteria for the sufficiency of an indictment and for whether a district court erred . . . in denying a bill of particulars are very similar"); *United States v. Beebe*, 792 F.2d 1363, 1367 (5th Cir. 1986) ("Because the indictment was sufficient, the district court did not abuse its discretion when it denied appellants' request for a bill of particulars."); *United States v. Mitchell*, 777 F.2d 248, 259 (5th Cir. 1985) ("For the same reasons [that the indictment is sufficient], we also reject defendants' argument that the district court abused its discretion in denying the defendants' motions for discovery and bill of particulars.").

"[W]hen the information requested is provided to the defendant in some other form, no bill of particulars is required." *United States v. Marrero*, 904 F.2d 251, 257 (5th Cir. 1990); *see also United States v. Boutte*, 13 F.3d 855, 858 (5th Cir. 1994); *Moody*, 923 F.2d 341, 351 (5th Cir. 1991); *United States v. Vasquez*, 867 F.2d 872, 874 (5th Cir. 1989). Therefore, if an indictment, coupled with a complete discovery production, accomplishes the goals of a bill of particulars, no bill of particulars is required. *See, e.g., United States v. Wadington*, 2022 WL 1548711 (W.D. La. Jan. 27, 2022); *United States v. Branton*, 2014 WL 3887403, at *4 (W.D. La. Aug. 7, 2014).

The grant or denial of a bill of information lies in the sound discretion of the court. *Wong*, 279 U.S. at 82-83. A denial of a bill of particulars will be upheld on appeal unless the defendant makes "a showing of surprise and *substantial* prejudice." *United States v. Nixon*, 816 F.2d 1022, 1031 (5th Cir. 1987) (emphasis added).

The defendant's motion for a bill of particulars fails for at least the following reasons.

### A.    The Indictment sufficiently apprises defendant of the charges against her.

"For an indictment to be sufficient, it must (1) contain the elements of the offense charged; (2) fairly inform the defendant of the charges he must prepare to meet; and (3) enable a defendant to plead an acquittal or a conviction in bar to future prosecutions for the same offense." *United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022) (cleaned up). It is not necessary for an indictment to contain all evidentiary details to support the charges. *United States v. Gordon,* 780 F.2d 1165, 1172 (5th Cir. 1986). "Generally, an indictment is sufficient when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements[.]" *Beebe*, 792 F.2d at 1366.

Defendant does not challenge the sufficiency of the indictment. Nor could she. The indictment cites and tracks the language of the applicable statutes, provides the dates of commission, and plainly sets forth the elements of the charged offenses. *See* Rec. Doc. 1. It is therefore sufficient, and a bill of particulars is not required.

### B.    The Government has provided voluminous discovery to defendant, including access to all images of the minor victim in the Government's possession.

Based on the discovery provided to defendant (as summarized above), defendant can have no doubt about the offenses with which she is charged. Contrary to the defendant's suggestion

otherwise,[3] the United States has already provided the defendant with complete discovery. Indeed, the United States' discovery productions have gone beyond the scope of its discovery obligations pursuant to Fed. R. Crim. P. 16. To begin, *all of the images* in the Government's possession have been made available to the defense on two separate occasions. Additionally, the Government has produced the following: (1) seven federal search warrant affidavits; (2) cell phone data, including messages between defendant and the photographer identified as Co-Conspirator-1; (3) financial records which detail transactions between defendant and others; (4) forensic reports related to analysis of electronic devices; (5) recorded interviews and interview reports of defendant, Minor Victim A, Co-Conspirator-1, and others; and (6) court records from a civil suit filed by defendant in the 431st Judicial District Court of Denton County, Texas, Case No. 21-5100-431, which contain defendant's own descriptions of the sexualized photographs of Minor Victim A, among other records. Significantly, the United States has offered to review the evidence with defense counsel in a reverse proffer, but defense counsel has failed to take advantage of the invitation.

In particular, the discovery materials clearly describe the images of Minor Victim A engaged in sexually explicit conduct that were pointed out to defense counsel at the initial review at FBI and the approximate number of images, as indicated in the following excerpts:

> Blue suit: Approximately 80 images of VICTIM-A in various poses on a bed while wearing a G- string bikini. Many of the images included VICTIM-A with her legs spread apart while lying on the bed. Approximately two of the images included VICTIM-A on all fours crawling on the bed. Approximately three of the images were of VICTIM-A positioned with her head on a pillow and her butt raised in the air. One of the images showed a close-up of the VICTIM-A's genitals posed in a sexual position on the bed. In this photo, VICTIM-A's genitals were barely covered by the G-string bikini. (Kinchen_001824; Kinchen_000968.)[4]

---

[3] The defense states: "[t]he defense is left with the belief, after seeing what has been represented to the defense as 'all' of the pictures, that in fact all of the pictures have not been made available." Rec. Docs. 38-1 at 3, 39-1 at 5. Defense counsel has no facts on which to base this belief.

[4] The Bates numbering refers to pages in discovery and is included for defense counsel's reference.

White suit: Images of VICTIM-A wearing a white one-piece leotard with white stockings and red high heels. The pictures were taken as a series of sexual poses on the bed. Many of the images included VICTIM-A with her legs spread apart while lying on the bed. Approximately 17 of the images included VICTIM-A on all fours crawling on the bed. Approximately 10 of the images were VICTIM-A positioned with her head down on the bed and her buttocks raised in the air. The sides of her leotard were rolled back exposing her buttocks. The images showed a close-up of the VICTIM-A's genitals posed in a sexual position on the bed. VICTIM-A 's genitals were barely covered because the sides of the leotard were rolled back to expose the genitals.  (Kinchen_001939.)

A photo of VICTIM-A posed at a pool in a black thong bathing suit. VICTIM-A was positioned on her knees facing away from the camera with her legs spread apart and the edges of her anus were visible. (Kinchen_001828.)

Additionally, interview reports, also provided in discovery, highlight that not only is Defendant well aware of the images in question, but she also knows who took the photos and the locations of the photoshoots. The following excerpts, taken from reports of defendant's own interviews, provide some examples:

KINCHEN had access to all of VICTIM-A's photos, except two sets. There was a blue set and a black set. The black set was shot in Baton Rouge near the old state capitol. The black swimsuit set taken by a waterfall were shot in October 2020 in Dallas, Texas. KINCHEN had access to the photos, which were on one of the hard drives located within her residence. (Kinchen_001048.)

The blue swim suit that VICTIM-A wore in the photographs from the bedroom were shot by Grant Durtschi in July 20-21, 2020 at an AirBNB that Durtschi purchased in Louisiana. The exact date of the shoot in the blue suit was July 21, 2020. The address to the AirBNB was XXX Oak Drive, Breaux Bridge, Louisiana, 70517. (Kinchen_001044.)

VICTIM-A did two shoots with Durtschi in the month of July 2020. One was in Dallas, Texas, and one was in Louisiana. The dates for Texas were July 9-11, 2020 and the dates for Louisiana were July 20-21, 2020. (Kinchen_001044.)

In sum, in addition to including the illegal images themselves, the produced materials provide information as to the identity of the victim, the dates and locations of photo shoots, the identity of the photographer, defendant's agreement with the photographer and role in the offenses,

defendant's financial incentive for the offenses, defendant's receipt in interstate commerce of the white leotard series, and defendant's knowledge that the photographer was a pedophile and would distribute photographs of Minor Victim A to other pedophiles.

Based on the discovery provided, defendant cannot credibly claim that she is unaware of the offenses with which she is charged and that she will be surprised at trial by the Government's proof. A bill of particulars is therefore not necessary. *See United Staes v. Carreon,* 11 F.3d 1225, 1239-40 n. 68 (5th Cir. 1994) (where defense counsel conceded he had received "a lot of discovery," it was unlikely that the court erred in denying a bill of particulars); *United States v. Richard*, No. 15-CR-00175, 2016 WL 837268, at *3 (W.D. La. Feb. 5, 2016), report and recommendation adopted, No. 6:15 CR 00175-01, 2016 WL 881742 (W.D. La. Feb. 29, 2016) (in child pornography case, holding that "when the record is taken as a whole, so much factual material has been made available to the defendant that a bill of particulars is not required"); *United States v. Davis*, No. CR 06-60040, 2006 WL 8439458, at *2 (W.D. La. Oct. 23, 2006) (denying motion for bill of particulars in child pornography case because "defendant has not provided any persuasive argument explaining how he will be surprised and prejudiced at trial if he does not obtain the [requested] information").

## C.    Defendant is seeking discovery of the Government's proof.

Defendant is not seeking an identification of the crimes with which she is charged—she wants to know what evidence the Government has and how it will prove its case. Specifically she requests the following information via a bill of particulars: (1) "the total number of images in the possession of the United States that are either, or both, 'child pornography' or 'CSAM,' individually BATES numbered with associated file number references"; (2) identification of the images that constitute child pornography; (3) where each image was found; (4) when each image

was created; and (5) the identity of the photographer. Rec. Doc. 39-1 at 5. Not only is all of that information available to the defendant in discovery (to the extent that it exists), it is not discoverable in a bill of particulars. As discussed above, a bill of particulars is not a discovery device. The information in the indictment, together with the discovery materials, more than adequately informs defendant about the pending charges and enables her to prepare for trial. A bill of particulars is therefore not necessary.

In particular, defendant's request that the United States index the images constituting child pornography should be denied. A bill of particulars is not a vehicle for the defendant to use to compel the United States to facilitate the defendant's evidence review and analysis. Even Rule 16, which governs discovery in criminal cases, does not dictate the manner in which the Government must produce its discovery materials. *See* Fed. R. Crim. P. 16; *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010) (Rule 16 "is entirely silent on the issue of the form that discovery must take; it contains no indication that documents must be organized or indexed."); *United States v. Yusuff*, No. 1:23-CR-43-RP-1, 2024 WL 1055117, at *2 (W.D. Tex. Mar. 11, 2024) ("Rule 16 does not dictate a manner in which the Government must produce its document production."). Nonetheless, the United States has already gone beyond what is required by ensuring that each of the images made available to defense counsel possessed a unique JPEG or file number.

**D.    The United States stands ready to provide defense counsel with an explanation of its evidence.**

Months ago, in January of this year, defense counsel made his initial review of the images. At that time, after asking to see the child pornography images, defense counsel was specifically directed to the images in the blue suit series, the white leotard series, the black bikini series, and the red bikini series. He reviewed the materials for a mere 20 minutes or so. Three days later—

although not required to do so—the Government offered to conduct a reverse proffer, yet defense counsel did not take advantage of this opportunity for the Government to explain the evidence and identify particular images of child pornography.  Defense counsel's lack of interest in a reverse proffer belies his contention that he is unaware of the nature of the charges.

Nonetheless, the prosecutors remain willing to sit down with defense counsel and review the evidence. In particular, the prosecution is willing to point defense counsel to the most egregious examples of child pornography that the United States will likely introduce at trial. And, after a trial date is set and the Government decides which images it will introduce at trial, the Government will provide ample notice to defendant.

### E.    Defendant's argument that the images are not child pornography provides no basis for a bill of particulars.

The real crux of defendant's argument is that the approximately 10,000 images briefly reviewed by defense counsel fail to meet the statutory definition of child pornography. Defendant's motion contains conclusory statements without the supporting legal analysis. Defendant relies solely on the uncited and incorrect legal proposition that nudity is required for an image to constitute child pornography or CSAM absent depiction of an actual sex act.[5] It is not. Defendant's blanket assertion that the images available at FBI did not constitute "sexually explicit conduct" is without merit and, in any event, is a jury issue and not ripe for a decision by the court.

Defendant's claim that the images do not constitute child pornography is essentially a challenge to the sufficiency of the evidence, which falls squarely and exclusively in the hands of the jury and therefore cannot be raised in a pretrial motion. *See United States v. Branton*, No. CR

---

[5] "None of the images observed in either visit to the FBI office in Baton Rouge constitute 'sexually explicit conduct' – no nudity, no other person in any image, no depiction of any sexual acts of any kind in any picture, and no depiction of sexual abuse of any kind in any picture."  Rec. Doc. 39-1 at 4.

14-00050, 2014 WL 3887403, at *4 (W.D. La. Aug. 7, 2014) (argument "that none of the images fit the definition of child pornography" is a challenge to the sufficiency of the evidence). As indicated in the Fifth Circuit's pattern charges, the jury is called upon to determine whether an image constitutes a visual depiction of sexually explicit conduct.

Additionally, as will be evident to the Court when it views the evidence at trial, there are many images which constitute child pornography, particularly images in the blue suit series and the white leotard series. For purposes of the statutes with which the grand jury charged the defendant, child pornography is a visual depiction of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2251(a), 2251(b), 2256(8)(a). "Sexually explicit conduct" means intercourse, bestiality, masturbation, sadistic or masochistic abuse, or a "lascivious exhibition of the anus, genitals or pubic area of a person." 18 U.S.C. §2256(2)(A); *see also* Fifth Cir. Pattern Jury Instructions Nos. 2.84, 2.85, 2.85D (2019). Whether an image depicts "lascivious exhibition of the anus, genitals or pubic area of any person" is, in turn, determined by reference to six factors, which were first set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd* 813 F.2d 1231 (9th Cir. 1987):

1. whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2. whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3. whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4. whether the child is fully or partially clothed, or nude;

5. whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6. whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id*.; *see* Fifth Cir. Pattern Jury Instructions Nos. 2.84, 2.85, 2.85D (2019). The *Dost* factors are non-exhaustive, and the ultimate determination must be made "based on the overall content of the visual depictions." *United States v. Barry*, 634 F. App'x 407, 413 (5th Cir. 2015) (unpublished) (quoting *United States v. Steen*, 634 F.3d 822, 827 (5th Cir.2011)).

Critically, the Fifth Circuit Court of Appeals, and other federal Courts of Appeal, have held that nudity is not required under *Dost*. *United States v. Boudreau*, 250 F.3d 279, 283 (5th Cir. 2001) ("We note, however, that 'Lascivious exhibition of the genitals or pubic area does not require full or partial nudity.'") (citing *United States v. Knox*, 32 F.3d 733, 744 (3rd Cir.1994)); *see also United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001) (citing *Knox* with approval). Indeed, the fourth *Dost* factor necessarily contemplates that an image can be CSAM if the child is "***fully or partially clothed, or nude***."  In *United States v. Hill*, the Fifth Circuit noted that, in the context of child pornography statutes, the ordinary meaning of "lascivious exhibition" of the genitals or pubic area "means a depiction which displays or brings forth to view the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." 142 F. App'x 836, 837 (5th Cir. 2005) (unpublished).

The vast majority, if not all, of the images in this case, involve sexually explicit or, at a minimum, sexualized images of a 12-year-old female. Some of the images identified both above and in the discovery productions clearly depict the child victim wearing string bikinis, positioned on a bed, buttocks and genitalia in the air. In several images, the child's face is not even visible as the image is taken from behind with the focal point on the buttocks and genitalia. There are other images in which the child is wearing skimpy lingerie, hands grasping the headboard of the bed,

with her legs spread apart and her genital area exposed. Moreover, the images were taken with the knowledge that the photographer was a pedophile and that the images would be sold online to other pedophiles for their sexual pleasure.  These images plainly meet the *Dost* factors regardless of whether the victim is entirely nude.

But even if the child pornography statutes required total nudity, which they do not, there are a number of images in which Minor Victim A's genitals *are*, in fact, exposed. Defense counsel has presumably reviewed all of these images, yet he fails to explain in his motion why the images do not meet the statutory definition of child pornography. Instead, defendant's motion makes conclusory observations about what defense counsel reviewed in the minutes he was at FBI. In short, defendant's assertion that nudity is the *sine qua non* of child pornography is without merit, and the United States intends to move *in limine* to prevent the Defendant from making that argument to the jury.

In any event, defendant does not need the relief sought in a bill of particulars to make his argument that nudity is required because, in all of the images, Minor Victim A is wearing some amount of clothing.

### F.    Defendant has failed to provide a compelling reason why she needs a bill of particulars.

The defendant argues that a bill of particulars is necessary so she can "know[] what images are being asserted as violations of the federal law" in the indictment. Rec. Doc. 39-1 at 5. Notably, three of the charges in the indictment—Counts One, Three and Four—do not require the United States to prove that any child pornography was even created *at all*.  For example, the conspiracy charges contained in Counts One and Three only require the United States to prove that the defendant conspired to produce/distribute the images, not that the images were actually produced.

16

Similarly, for Count Four, the United States is only required to prove that the defendant attempted to receive child pornography. So, to the extent the defendant seeks a bill of particulars to show "what images are being asserted as violations of the federal law," Counts One, Three, and Four do not require the United States to prove that a sexually explicit image was actually created. *See Branton*, 2014 WL 3887403, at *4 (finding that when defendant is charged with attempt, Government is not required to show that a visual depiction is actually produced) (citing *United States v. Crow*, 164 F.3d 229 (5th Cir.1999)); *Richard*, 2016 WL 837268, at *2 (rejecting defendant's argument that he needed to know what image formed the basis of attempted production charges, finding that the Government was not required to show that an actual visual depiction was produced.)

It appears that defendant is asking the Government to identify the images that are *relevant* to the charged violations. However, a bill of particulars would be fruitless as *all* of the images are relevant to *all* counts of the indictment. In short, all images of the Minor Victim A establish the defendant's (1) relationship and agreement with Co-Conspirator-1, (2) participation in multiple shoots on different days and at different locations, (3) knowledge of the nature and content of the images, and (4) ongoing intent to take sexually explicit images and sell the images to pedophiles online. Stated simply, a bill of particulars would not obviate the need for the defendant to review all of the images in the case.

Defendant's argument, taken to its logical conclusion, would require the United States to file a bill of particulars in almost every CSAM trafficking case. Indeed, in most CSAM trafficking cases, defendants typically possess/receive/distribute/produce thousands of images of CSAM, all of which could not reasonably be admitted into evidence under the Federal Rules of Evidence. Defendant's argument would mean that a bill of particulars would be necessary in nearly every

CSAM trafficking case, thus requiring the United States to choose, long before trial, the images that it would use as exhibits to present to the jury. Defense counsel will be given notice of the United States' exhibits prior to trial. He has no compelling need for identification of those exhibits at this stage of the game.

### G.    Conclusion

In short, defendant has been more than sufficiently apprised of the charges against her so as to minimize the risk of surprise at trial.  Further, defendant has all of the information necessary in order to prepare a defense. As such, the United States respectfully requests that defendant's motion for a bill of particulars be denied.

### III.    <u>DEFENDANT'S MOTION TO COMPEL IS WITHOUT MERIT</u>.

In addition to the motion for bill of particulars, defendant also filed a motion to compel the United States to produce copies of "non-CSAM" images, or in the alternative, allow the defense to copy all non-CSAM images. Rec. Doc. 38-1 at 4. Unfortunately, defendant provides no authority for his request. Presumably, defendant's motion is based on Rule 16, which governs discovery in criminal cases. However, Rule 16 does not require production of copies of all non-CSAM images in the case.

Rule 16 requires the prosecution to provide the defendant with a copy of any item that "is material to preparing the defense," is intended for use in the Government's case-in-chief at trial, or "was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). The United States' obligations under Rule 16 are limited by the Adam Walsh Child Protection and Safety Act. *See* Pub. L. No. 109-248, § 504, 120 Stat. 587, 629 (July 27, 2006) (hereinafter, "Adam Walsh Act"). Specifically, the Act expressly prohibits the Government from providing copies of child pornography as long as the evidence is made "reasonably available" to the defense. *See* 18 U.S.C.

§3509(m). This provision was enacted to accomplish the congressional goal of "protecting children from repeat exploitation in child pornography." *See* Pub. L. No. 109-248, § 501(2); *see also* § 501(1)(B). To comply with the Adam Walsh Act, the United States must take special care not to disclose any images which may be considered child pornography.

As discussed above, the vast majority, if not all, of the images in this case, involve sexually explicit or, at a minimum, sexualized images of a 12-year-old female. In other words, most or all of the 10,000 images are potentially child pornography and therefore cannot be distributed to the defendant. To determine which of the images are definitively non-contraband would require the prosecution to conduct a *Dost* analysis of each of the 10,000 images. Such an exercise would be infeasible and unduly burdensome.

Additionally, disclosure of images after a *Dost* analysis would risk inadvertent or accidental distribution of contraband images. In fact, defense counsel himself experienced this very issue in another case in which he claimed prosecutors did not disclose non-pornographic images.[6] In that case, the court granted defense counsel's request for copies of non-CSAM, which resulted, as feared, in the inadvertent reproduction and disclosure of child pornography in discovery.[7] The same risk applies here.

Even if the United States conducted a *Dost* analysis of every image and identified some images as non-CSAM, it is safe to say that defendant would be entitled to copies of few, if any, of those images pursuant to Rule 16. First, although defense counsel has been given the opportunity to view every image, he has failed to explain how any non-contraband image might be material to the preparation of defendant's defense. Second, the United States has yet to identify any non-

---

[6] *See* https://www.theadvocate.com/baton_rouge/news/crime_police/ex-deputys-sex-crimes-trial-delayed-after-lawyer-says-attorney-general-withheld-evidence/article_9c8b0608-cb0b-11ec-abd3-2f02db99189b.html
[7] *See* https://www.wbrz.com/mobile/cleanStory.cfm?n=153622;

CSAM image that it intends to introduce at trial. And, third, only a limited number of the images were "obtained from or belong[] to the defendant." If there are any non-CSAM images in the universe of images obtained from the defendant, they are the only images subject to copying under Rule 16.

Rule 16 allows the Court, "for good cause," to "deny, restrict, or defer discovery or inspection." Fed. R. Crim. P. 16(d)(1). Here, there is good cause for the Court to restrict copying of any of the images of Minor Victim A that might be deemed non-CSAM: defendant has access to all of the images at FBI and will not be prejudiced by the lack of physical copies; it would be impractical and unduly burdensome to require the Government to conduct a *Dost* analysis of all of the images; copying of *any* of the images would risk distribution of child pornography; and production of *any* copies to the defense, even of non-CSAM images, would re-victimize the child victim.

In the end, given the genuine risks of compliance with defendant's request and the lack of a demonstrated need for copies, it is unclear how the pretrial reproduction of non-pornographic or non-CSAM images will advance any defense theory in a way that cannot be accomplished with review of the evidence at the FBI office, the exchange of trial exhibits, or the cross-examination of Government witnesses at trial. Significantly, all of the images of child pornography will continue to be made "reasonably available" to defense counsel and any defense experts at the FBI's office in Baton Rouge, Louisiana.

**IV.**    <u>**CONCLUSION**</u>

For the reasons stated herein, the United States respectfully requests that this Honorable

Court deny defendant's pretrial motions without a hearing.

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY


<u>/s/ Kristen Lundin Craig</u>
Kristen Lundin Craig, LBN 32565
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana  70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: kristen.craig@usdoj.gov

Charles Schmitz, CT BN 429457
Trial Attorney U.S. Department of Justice
Child Exploitation and Obscenity Division
1301 New York Avenue NW, Suite 1100
Washington, DC 20530
Telephone: 202-913-4778
Email: charles.schmitz2@usdoj.gov